**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR USER INFORMATION OBTAINED BY GOOGLE, INC FOR INVESTIGATION OF VIOLATION OF 22 U.S.C. § 2778 | SC No. 19-sc-1868<br><br>__Filed Under Seal__ |

*Reference:  USAO Ref. # 2019R02210; Subject Information: Transactional records associated with users downloading the ATN Obsidian 4 application from Google Play*

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d).  The proposed Order would require Google, Inc. ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, California, to disclose certain records and other information pertaining to users downloading the ATN Obsidian 4 application by accessing the Google Play service.  The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C. § 2703(c)(2) (Part I of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II of Attachment A).

2.      This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(d).  Specifically,

the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3.     As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.  The statutes setting forth the offenses under investigation, namely the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-30, and Conspiracy, 18 U.S.C. § 371, apply extraterritorially.

4.     A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the contents of a wire or electronic communication, or the records or other information sought . . . are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.     The United States is investigating the unauthorized export of items controlled on the United States Munitions List ("USML") and for which a license granted by the United States Department of State is required prior to export, pursuant to the ITAR.  The investigation concerns possible violations of, *inter alia*, 22 U.S.C. § 2778 and 22 C.F.R. §§ 120-30.

6.     Pursuant to the authority granted under the AECA, the President has issued orders and regulations controlling the import and the export of items designated as defense articles and defense services.  Items so designated constitute the USML.  22 U.S.C. § 277(a)(1). The AECA, 22 U.S.C. § 277(a)(c) provides, in pertinent part, as follows:

Any person who willfully violates any provision of this section, section 2779 of this title, … or any rule or regulation issued under this section or section 2779 of this title, … or who willfully, in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than 20 years, or both.

7.      The ITAR imposes the following requirement set forth in Section 123.1(a), among others:

Any person who intends to export or to import temporarily a defense article must obtain the approval of the Directorate of Defense Trade Controls prior to the export or temporary import, unless the export or temporary import qualifies for an exemption under the provisions of this subchapter.

8.      The ITAR also identifies countries for which it is the policy of the United States to deny licenses and other approval for exports of defense articles and defense services, and additional countries for which it is the policy of the United States to deny licenses and other approvals subject to certain exceptions specific to particular countries.  22 C.F.R. § 126.1(d).  With regard to these countries, the ITAR mandates:

No sale, export, transfer, reexport, or retransfer of, and no proposal or presentation to sell, export, transfer, reexport, or retransfer, any defense articles or defense services subject to this subchapter may be made to any country referred to in this section (including the embassies or consulates of such a country), or to any person acting on its behalf, whether in the United States or abroad, without first obtaining a license or written approval of the Directorate of Defense Trade Controls. However, in accordance with paragraph (a) of this section, it is the policy of the Department of State to deny licenses and approvals in such cases.

9.      U.S. Company A, which is not the target of an investigation by U.S. Immigration and Customs Enforcement (ICE), develops and manufactures night vision devices, thermal imaging optics, and other optical sights and vision systems, and is headquartered in San Francisco, California.  Specifically, U.S. Company A manufactures a rifle scope which features thermal imaging, ballistic calculation, and video recording; this rifle scope is controlled

on the United States Munitions List and a State Department license pursuant to the International Traffic in Arms Regulations is required for export.

10.     U.S. Company A retained a third party to develop an application which can be downloaded to mobile devices utilizing the Android operating system.  This application, when installed, allows the user to stream video from, and calibrate and control certain features of, the rifle scope described above.  This application is identified as the "ATN Obsidian 4" application, and is available for download through the Google Play digital distribution service operated by PROVIDER.  The ATN Obsidian 4 application allows users to stream video from, or control the features of certain additional rifle scopes manufactured by Company A, all of which are ITAR-controlled.  Since this application is used exclusively to control the functions of a physical rifle scope subject to ITAR restrictions, there is a reasonable basis to conclude that the results requested in Attachment A will be relevant to an investigation into potential ITAR violations.

11.     ICE Homeland Security Investigations has, on multiple occasions, intercepted the rifle scopes manufactured by Company A – and compatible with the ATN Obsidian 4 application – while those rifle scopes were in the process of being exported from the United States in violation of the AECA and ITAR.  These include, for example, one investigation in which this rifle scope was being exported in July 2018 to the Netherlands without a necessary license and through an online resale from a seller located in the United States; one investigation in which this rifle scope was being exported in March 2018 from the United States to Hong Kong without a necessary license; one investigation in which this rifle scope was being exported to Canada in or about February 2017 without a necessary license; and one investigation in which this rifle scope was intercepted in July 2016 while in the process of being exported without a necessary license.  This pattern of unlawful, attempted exports of this rifle scope in combination with the manner in which

the ATN Obsidian 4 application is paired with this scope manufactured by Company A supports the conclusion that the information requested herein will assist the government in identifying networks engaged in the unlawful export of this rifle scope through identifying end users located in countries to which export of this item is restricted.

12.      Therefore the government is requesting that PROVIDER provide the records and other information described in Part II of Attachment A for users accessing the Google Play service and downloading the ATN Obsidian 4 application.  The government submits that identifying individuals located in countries designated at 22 C.F.R. § 126.1(d) who have downloaded this app will be relevant to an investigation into potential ITAR violations.

## <u>REQUEST FOR ORDER</u>

13.      The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity.  Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within fifteen days of receipt of the Order.

14.      The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order.  *See* 18 U.S.C. § 2705(b).  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the

court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[1]

15.     In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

16.     Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5).

17.     Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme

---

[1] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

18.     Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.  Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

19.     In this matter, the United States also requests that the instant Application and the Order be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality.


----- *The remainder of the page intentionally left blank.*  -----

*See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  For the reasons stated

above, the United States has a compelling interest in confidentiality to justify sealing the

Application and Order.  *See id.*


Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845


_____/s/_____
Jorge Gonzalez
Special Assistant United States Attorney
D.C. Bar No. 499260
United States Attorney's Office
555 Fourth Street, NW
Washington, D.C.  20530
Phone:  (202) 252-7805
Jorge.Gonzalez3@usdoj.gov


_____/s/_____
Thomas A. Gillice
Assistant United States Attorney
D.C. Bar No. 452336
Phone:  (202) 252-1791
Thomas.Gillice@usdoj.gov